136

EUGENIA SUSANA PAGÁN, Plaintiff and Appellant, *v.*
CORNELIO D. SANTIAGO, Defendant and Appellee.

No. 9733. Argued June 2, 1948.—Decided July 14, 1948.

*Mario Báez García,* for appellant.   *J. Alemañy Sosa* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Eugenia Susana Pagán brought, in the District Court of Mayagüez, an action of revendication, together with a

claim for civil fruits, against Cornelio D. Santiago. As a first cause of action, she alleged that she is the lawful owner of an 8–acre (*cuerdas*) rural property, which she acquired while she was unmarried, and that the defendant, without any right or title, in bad faith, unlawfully, and against her will holds actual possession of said property and refuses to deliver it to her; and as a second cause of action, she claimed fruits in the amount of $15,000.

The defendant answered, denied the essential averments of the complaint, and set up as special defenses that if the action is considered as one for rescission or for nullity, said action has prescribed; and that she has acquired the property by prescription. Said questions of law were dismissed by the lower court, and after the case went to trial and at the close of the evidence for the plaintiff, the defendant presented a motion for nonsuit which was sustained.

The plaintiff has appealed from the judgment rendered, and in support of her appeal she contends that the lower court erred in holding (1) that she had not proven her title to the property described in the complaint; (2) that she must first obtain the annulment of defendant's title in order to be able to bring the action of revendication; (3) in sustaining the motion for nonsuit; and (4) in dismissing the motion for reconsideration filed.

■■ In the judgment rendered, the lower court said:

"In actions of revendication, when the defendant in possession holds a title which has the same source as the one relied on by plaintiff or is derived from plaintiff, it is necessary for the latter to institute the proper action to invalidate the title of the possessor, and until such annulment is obtained in an independent action, said plaintiff lacks any title to revendicate."

In support of the foregoing assertion it cited 3 Manresa, *Comentarios al Código Civil Español*, 1934 ed., p. 143; 6 Scaevola, *Código Civil*, p. 235; the judgments of the Supreme Court of Spain of April 19, 1905, and March 2, 1912, and

the decision of this Court in *Estate of Blondet et al.* v. *Fantauzzi Hermanos*, 14 P.R.R. 302. The parties devote large portions of their briefs to discuss this point.

Nowadays, under Rule 18 (*b*), the joinder of claims such as those set up by the plaintiff in his complaint is clearly permissible. Said rule provides as follows:

"(*b*) *Joinder of Remedies; Fraudulent Conveyances.*— Whenever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action; but the court shall grant relief in that action only in accordance with the relative substantive rights of the parties. In particular, a plaintiff may state a claim for money and a claim to have set aside a conveyance fraudulent as to him, without first having obtained a judgment establishing the claim for money."

The language of the above-cited subdivision seems to us entirely clear. In connection with the above rule, Moore in vol. 2 of his work on Federal Practice, 1947 Cumulative Supplement, at p. 27, says that:

"The language of this subdivision is broad and *authorizes the joinder of a principal and a contingent claim in all cases.*" (Italics ours.)

In *Armour & Co. of Delaware* v. *B. F. Bailey, Inc.*, 132 F. 2d 386, it was held that the joinder in a single action of claims previously cognizable only after another claim had been prosecuted to a conclusion contemplated a joinder of an action to set aside a fraudulent conveyance with an action to establish a claim.

The action brought herein is one of revendication and for recovery of fruits. There is no doubt that under the above rule both claims may be joined and that the lower court erred in holding otherwise.

A motion for nonsuit, such as the one filed in this case, admits for the purposes of the motion the truth of the evidence introduced by the plaintiff. It might be said that

such a motion is a demurrer to the evidence introduced by the plaintiff in support of the averments of his complaint. *Villanueva* v. *Suárez et al.*, 41 P.R.R. 39; *People* v. *Rivas et al.*, 68 P.R.R. 439. On the other hand, when said motion is presented not only is the truth of the evidence introduced by the plaintiff admitted, but the making out of a prima facie case by the plaintiff will be sufficient for a dismissal of the motion. *Méndez* v. *Banco Comercial*, 26 P.R.R. 586, and *Príncipe* v. *American R. R. Co. of P. R.*, 22 P.R.R. 282. Therefore, we deem it necessary to analyze the evidence introduced in the lower court in order to determine whether or not said court was justified in sustaining the motion for nonsuit.

The pertinent part of the documentary evidence was as follows:

On December 2, 1922, there was executed before Notary Ángel A. Vázquez a deed, wherein it was stated that the plaintiff Eugenia Susana Pagán was the owner of the property in controversy herein and that she had acquired it while she was unmarried, in part by inheritance from her parents and in part by purchase from her brother Cirilo Pagán. On that same day another deed was executed before the same notary, whereby the plaintiff transferred by sale to the defendant Cornelio D. Santiago the above-mentioned property for the sum of $250, which she stated she had received from the purchaser prior to the execution of the deed, but it was agreed "that if at the termination of one year, counted from today, the seller returns to the purchaser the two hundred and fifty dollars or selling price, and in addition pays the expenses for the preparation of the documents, Mr. Santiago shall execute the corresponding deed of reconveyance, otherwise the property sold will be considered as irrevocably alienated." In the latter deed it was also set forth that the purchaser was already in possession of the property sold and that the price was not inadequate.

The oral evidence was as follows:

*Eugenia Susana Pagán*, plaintiff herein, testified that three months after the loan referred to in the above-mentioned deed was made, the property was leased to Luis Pabón for the term of two years; that Pabón paid $100 for the first year's lease, and she immediately delivered said amount to the defendant; that when the lease terminated she turned over the property to her brother and subsequently to Antonio Rivera for two years; that afterward she moved to San Juan and her brother took charge of the property and later sent word to her that Ramón Quiñones held it under a lease, Cornelio Santiago having leased it to him; that then she wrote to Santiago and the latter failed to answer her letter, and that Ramón Quiñones gave up the lease upon learning that the property did not belong to Santiago; that afterward the property was leased to Juan Morales Díaz; that subsequently she went to New York and has since returned to Puerto Rico to claim the property; that the deal she made with Santiago was to borrow $200 from him and to pay him $250 at the end of two years, she giving the property as security; and that she has paid said amount in full, but that Santiago, instead of executing a new deed, has returned to her the original deed of sale.

*Mariana Pagán de López* is a daughter of the plaintiff and she knows that what her mother did was to borrow $200 from Cornelio D. Santiago; that she executed a deed of sale with the right of redemption (*pacto de retro*) for a year and that her mother paid said amount to Mr. Santiago at the end of the year.

*Francisco Pabón* is a son of Luis Pabón and knows that his father leased the property in controversy from the plaintiff Eugenia Susana Pagán.

*Ramón Quiñones Delgado* was an adjoining landowner and requested Santiago to lease him the property and Santiago informed him that they must wait until he wrote to Doña Susana to obtain her consent, and that about a month

or a month and a half afterwards Santiago leased the property to him.

At the close of the cross examination of the last-named witness, the attorney for the plaintiff stated that he caused Cirilo Pagán and Antonio Rivera to be sworn as witnesses, but that since their testimony was cumulative he waived the same. The defendant forthwith filed the motion for nonsuit to which we have already referred, and the court sustained it.

Act No. 47 of April 13, 1916 (Sess. Laws, p. 100) provides as follows:

"That in any of the following cases sales of real estate on reversion shall be presumed to constitute a contract of loan for the amount of the price, with a mortgage on the property sold, as security:

"1. When the buyer fails to enter into material possession of the thing sold.

"2. When the vendor pays to the buyer interest on the selling price, though such interest may be called rental or otherwise.

"3. When a grossly inadequate sum appears in the contract, as the price of alienation."

In the deed executed it is clearly stated not only that the plaintiff transfers by sale to the defendant, the property described, but also that the purchaser is already in actual possession of the property sold and that the price paid is not inadequate. It is further agreed that if at the termination of one year, counted from the execution of the deed, the vendor returns to the purchaser the price of the sale, the defendant shall execute the corresponding deed of reconveyance, otherwise the property shall be irrevocably alienated. Under those circumstances, and according to the deed, the contract entered into would be one of sale with right of redemption. However, as the plaintiff testified that the defendant lent to her $200 and that she had to return to him $250, the transaction might be considered, under subdivision 2 of the Act of 1916, as a loan secured by mortgage.

But, whether it be a sale with right of redemption or a loan secured by mortgage, does the evidence show prima facie that the vendor fulfilled the contract? It certainly does, for Eugenia Susana Pagán as well as her daughter Mariana Pagán de López stated that the former had paid in full the amount received from Santiago, and the latter also stated that the payment had been made at the end of one year, which was the term fixed in the deed of sale. Since the evidence showed prima facie that the plaintiff paid within one year the amount for which she sold her property with the right of redemption, the duty of the defendant to execute the corresponding deed and the right of the plaintiff to recover the property were clear. The motion for nonsuit should have been denied and defendant's evidence heard.[1]

The judgment appealed from should be reversed and the case remanded to the lower court for further proceedings.

Mr. Justice De Jesús did not participate herein.

---

[1] As we stated in note (1) in the case of *Torres* v. *Marcano*, 68 P.R.R., 813: "Under Rule 41(*b*) of Civil Procedure the defendant does not waive his right to present evidence when his motion for nonsuit has been overruled." See 4 Federal Rule Decisions, p. 133, in which it is stated: "In a case tried without a jury a defendant may at the conclusion of plantiff's evidence move for a dismissal without waiving his right to offer evidence in the event his motion is denied."