Iris Calder NOWELL

v.

Ames NOWELL, Lawrence Ames Nowell, and the National Shawmut Bank of Boston.

Civ. A. No. 67–963–M.

United States District Court
D. Massachusetts.

Dec. 31, 1968.

Brooks Potter, Mark A. Michelson, Choate, Hall & Stewart, Boston, Mass., for plaintiff.

Stephen A. Moore, Gaston, Snow, Motley & Holt, Boston, Mass., for defendant National Shawmut Bank.

No appearance for individual defendants.

## MEMORANDUM OF DECISION

MURRAY, District Judge.

This is an action brought by a California citizen against her former husband and trustees of a trust corpus located in Boston.[1] Plaintiff's former husband is one of the trustees, and is a citizen of Texas. The other trustees are a citizen of Colorado and a national banking association with its principal place of business in Boston ("the Bank"). The action was commenced by service of a summons, complaint and trustee writ on defendant Bank.

### I. *Introduction*

Plaintiff's complaint alleges that her former husband, Ames Nowell, owes her money on an unsatisfied judgment recovered in the United States District Court for the Northern District of Texas (Count I), and owes her the costs of appeal from that judgment in the Court of Appeals for the Fifth Circuit (Count II). The complaint further alleges that Ames Nowell owes her money under a separation agreement in writing, or, alternatively, under the terms of a Mexican divorce decree which incorporated the separation agreement as part of the decree of the Mexican court; that he intends never to pay plaintiff any sums payable to her under such agreement or under such divorce decree; and that the obligation of Ames Nowell to pay plaintiff money at fixed times under such agreement or such divorce decree is continuing and is now in full force and effect (Count III). The complaint further alleges that Ames Nowell "is presently the only beneficiary of [the trust held by the Bank] * * * entitled to receive payments of income therefrom, and such income payments are mandatory". Thus, plaintiff seeks in this action (1) to satisfy her claims against her former husband for money due and owing her by applying the income payments now due him under the trust and seized by the trustee process; (2) to impress an equitable charge or lien upon future income payable to him to secure any present indebtedness and future payments which may become due her under the separation agreement or Mexican divorce decree;

---

1. For reasons appearing *infra*, the court has allowed motions for leave to amend and to amend the complaint, and it is read as amended.

and (3) specific performance of the separation agreement or Mexican divorce decree.

Plaintiff has moved for leave to amend and to amend her complaint pursuant to Federal Rule of Civil Procedure 15(a), and these motions have been granted. By order dated April 17, 1968, this court dismissed the original complaint, finding:

(1) that plaintiff has not shown that the action is between citizens of different states, and

(2) that jurisdiction over the defendants is not obtained by the procedure invoked by the plaintiff * * *.

Prior to entering its order, the court heard argument on the various grounds urged by defendant Bank. In addition, argument was heard on the Bank's motion to quash the trustee writ. At no time in these proceedings have the individual defendants appeared, and, for all that shows on the papers before the court, no notice has been given them concerning this proceeding. Since the matter has been fully argued previously, the motion to dismiss is treated as a renewed attack upon the amended complaint. Consideration will also be given to the Bank's motion to quash the trustee process issued in this case. This motion is also treated as if it was renewed here. At the outset, however, it seems clear from plaintiff's motion to amend that she has cured the Bank's objections to the allegations in her original complaint concerning the citizenship of defendant Ames Nowell. It is now alleged that Ames Nowell is a citizen of Texas, while previously plaintiff claimed only that he was "of parts unknown". Thus, the first reason supporting this court's former order of dismissal can no longer stand.

Another preliminary matter may be summarily disposed of. The Bank objected to the original complaint on the ground that it did not join as a defend-ant the third trustee of the trust involved. In plaintiff's amended complaint, Lawrence Ames Nowell has been named as a party defendant. By affidavit dated February 26, 1968, the Bank stated that it, Ames Nowell, and Lawrence Ames Nowell are the present trustees of the trust. It follows there can be no objection to the complaint on the ground that it fails to name indispensable parties to the lawsuit. Whether the absent trustees can be served with process in this case is a different question, and it will be taken up later.[2]

## II. *Plaintiff's Choice of Forum*

### A. The Foreign Judgment Registration Statute

■ As to other questions raised, it is important to point out what this action does not involve. It is not an ancillary execution proceeding on a judgment recovered in another federal district court and registered here. While 28 U.S.C. § 1963 (1964) provides that such a judgment "shall have the same effect as a judgment" recovered here and "may be enforced in like manner", it is not alleged that the Texas judgment has been registered as required by that section, and no copy of that judgment is presently before the court that could be deemed "registered". Plaintiff has chosen not to follow the section 1963 registration procedure, and this case cannot be viewed as one arising under that section. Rather, that part of plaintiff's complaint seeking recovery on her Texas judgment must be considered a new and independent proceeding.[3]

### B. Subject-Matter and Personal Jurisdiction Generally

■ There is no question in this action concerning the subject-matter jurisdiction of the court. This is a controversy between citizens of different states, and, under 28 U.S.C. § 1332(a)(1) (1964), the court has jurisdiction

---

2. *See* note 5 *infra* and accompanying text.

3. *See* 2 J. Moore, Moore's Federal Practice ¶ 1.04[2] (2d ed.1967).

over the dispute between the parties.[4] Since the plaintiff's former husband, Ames Nowell, is a non-resident, however, the question posed is whether this court is authorized by statute or rule, considering the allegations in the complaint, as amended, to affect his interest in property located within the District of Massachusetts.[5] This court has no in personam jurisdiction over the defendant, and no long-arm statute is applicable to this case. The plaintiff requests, however, that the court order her former husband "to appear or plead by a day certain" pursuant to 28 U.S.C. § 1655 (1964).

### C. Venue

■ The statute from which section 1655 was derived has been the subject of many judicial constructions. It has

received due notice from commentators.[6] In 1875 it was re-enacted as part of an act prescribing the venue requirements for actions in the United States Courts.[7] The first part of that venue act, as modified over the years, is now 28 U.S.C. § 1391 (Supp. III 1967). Relevant is subsection (a) of that section, which reads as follows:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.

A series of cases,[8] including an 1894 Supreme Court decision,[9] have held that the general venue requirements now contained in section 1391(a) are not applicable to actions properly within section

4. Two cases decided by the Seventh Circuit Court of Appeals indicate that diversity of citizenship is not required in cases where constructive service of process may be obtained under 28 U.S.C. § 1655 (1964). *See* Huntress v. Estate of Huntress, 235 F.2d 205, 208 (7th Cir. 1956); Graff v. Nieberg, 233 F.2d 860, 862–63 (7th Cir. 1956). It should be noted, however, that the position taken by the Seventh Circuit finds no support in other cases decided under section 1655. *See* 2 J. Moore, *supra* note 3, ¶ 4.34[2] at 1248 & n. 8. For a recent decision holding that diversity is required *see* Sudduth Brothers, Inc. v. Kyanite Mining Corp., 270 F.Supp. 595 (E.D.Tenn. 1967).

5. It is assumed that Lawrence Ames Nowell, the trustee named as a defendant in plaintiff's amended complaint, should be considered an indispensable party to this action within the meaning of Fed. R.Civ.P. 19(b). *This is so because a judgment in favor of plaintiff would affect the administration of the trust. See* Franz v. Buder, 11 F.2d 854, 858 (8th Cir. 1926), cert. denied, 273 U.S. 756, 47 S.Ct. 459, 71 L.Ed. 876 (1927). Lawrence Ames Nowell, being a citizen of Colorado, is not subject to the in personam jurisdiction of this court. As a trustee, however, his duties in respect of the Massachusetts trust corpus would be sufficient to permit constructive service under 28 U.S.C. § 1655 *if the action is properly brought under that section*

*with respect to the alleged debtor, Ames Nowell. Cf.* 3A J. Moore, Moore's Federal Practice ¶ 18.11 at 2074–77 (2d ed. 1968) (action to set aside fraudulent conveyance brought under 28 U.S.C. § 1655 should be considered in rem at least as to transferee).

6. *See, e.g.,* 2 J. Moore, *supra* note 3, ¶¶ 4.34–4.41; 3A J. Moore, *supra* note 5, ¶ 18.11; 7 J. Moore, Moore's Federal Practice ¶ 64.09 [1]–[2] (2d ed.1968); Blume, Actions Quasi in Rem under Section 1655, Title 28, U.S.C., 50 Mich. L.Rev. 1 (1951); Currie, Attachment and Garnishment in the Federal Courts, 59 Mich.L.Rev. 337, 373 n. 162 (1961) (quarreling with Blume); Kaplan, Amendments of the Federal Rules of Civil Procedure, 1961–1963 (I), 77 Harv. L.Rev. 601, 622–29 (1964) (relation between section 1655 and Fed.R.Civ.P. 4(e)).

7. This summary of section 1655's history is taken from Blume, *supra* note 6, at 2–3.

8. *E. g.,* Shuford v. Anderson, 352 F.2d 755, 759 (10th Cir. 1965), cert. denied, 383 U.S. 935, 86 S.Ct. 1065, 15 L.Ed.2d 852 (1966); Seven Oaks, Inc. v. Federal Housing Administration, 171 F.2d 947, 950 (4th Cir. 1948). *See* 1 J. Moore, Moore's Federal Practice ¶ 0.142[2.–4] at 1473 (2d ed.1964).

9. Greeley v. Lowe, 155 U.S. 58, 72, 15 S. Ct. 24, 39 L.Ed. 69 (1894).

1655. Thus, since plaintiff is a citizen of California and her former husband, the defendant Ames Nowell, is a citizen of Texas, venue is proper in this district if this case falls within section 1655. On the other hand, venue is improper if it is to be determined solely by reference to section 1391(a).

### D. Service of Process under Rule 4(e)

Prior to the 1963 Amendments to the Federal Rules of Civil Procedure, it had been consistently held that a civil action originally brought in a district court could not be commenced by attachment.[10] In 1963, however, Rule 4(e) of the Federal Rules of Civil Procedure was amended to provide in relevant part as follows:

\* \* \* \* \* \*

Whenever a statute or rule of court of the state in which the district court is held provides \* \* \* for service upon or notice to \* \* \* [a party not an inhabitant of or found within the state] to appear and respond or defend in an action by reason of the attachment or garnishment or similar seizure of his property located within the state, service may \* \* \* be made under the circumstances and in the manner prescribed in the statute or rule.[11]

Together with a complementary change in Rule 4(f),[12] this amendment permits the commencement of an original action by trustee process.[13] Rule 82 provides, however, that "[t]hese rules shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of actions therein". The restriction imposed by section 1391(a) must limit the venue of actions commenced under Rule 4(e) because of the injunctive language of Rule 82. Manifestly, this limitation was not unforeseen by the Advisory Committee on Rules for Civil Procedure. The Committee's Notes to amended Rule 4(e) state categorically that "[t]he necessity of satisfying subject-matter jurisdictional requirements and requirements of venue will limit the practical utilization of these methods of effecting service".[14]

---

10. *E.g.*, Big Vein Coal Co. of West Virginia v. Read, 229 U.S. 31, 33 S.Ct. 694, 57 L.Ed. 1053 (1913); Davis v. Ensign-Bickford Co., 139 F.2d 624 (8th Cir. 1944). This, of course, is not to suggest that attachment would be an improper device to preserve the status quo in an action thought to be within section 1655. *See* Fed.R.Civ.P. 64; *cf.* Shuford v. Anderson, 352 F.2d 755, 757 n. 2 (10th Cir. 1965), cert. denied, 383 U.S. 935, 86 S.Ct. 1065, 15 L.Ed.2d 852 (1966) (lis pendens); Hearst v. Hearst, 15 F.R.D. 258 (N.D.Cal.1954) (attachment permitted when it is likely that court will obtain in personam jurisdiction over defendant), noted critically in 68 Harv.L.Rev. 367 (1954).

11. Fed.R.Civ.P. 4(e) (2). Mass.Gen. Laws ch. 227, § 1, authorizes a personal action against a non-resident when an attachment is made of his property. Rule 14 of the Superior Court provides for notice to non-resident defendants of pending actions. *See* Cheshire Nat'l Bank v. Jaynes, 224 Mass. 14, 112 N.E. 500 (1916); Gulda v. Second Nat'l Bank, 323 Mass. 100, 104–105, 80 N.E. 2d 12, 15 A.L.R.2d 605 (1948); Nat'l

Shawmut Bank of Boston v. City of Waterville, 285 Mass. 252, 189 N.E. 92 (1934).

12. Amended Rule 4(f) provides that "[a]ll process other than a subpoena \* \* \* when authorized by a statute of the United States or by these rules, [may be served] beyond the territorial limits of \* \* \* [the state in which the district court is held]".

13. *See* Advisory Committee on Rules for Civil Procedure, Notes on 1963 Amendments, 28 U.S.C.A. Rule 4 (Supp.1967).

14. 28 U.S.C.A. Rule 4 (Supp.1967). *See also* United Indus. Corp. v. Nuclear Corp. of America, 237 F.Supp. 971, 980 (D.Del.1964) (section 1391(b) venue provisions applied in case commenced under Rule 4(e)); 1 W. Barron and A. Holtzoff, Federal Practice and Procedure with Forms § 183 (C. Wright Supp. 1967).

Professor Moore comments on this matter as follows:

The problem of venue in an original quasi in rem action in the federal courts raises issues perhaps not faced

E. Notice to "Appear or Plead" under 28 U.S.C. § 1655: The Pre-Existing Lien Rule

█ The question presented for decision in view of plaintiff's request that notice issued to defendant pursuant to section 1655 is whether this action on a judgment and a separation agreement or divorce decree is "an action * * * to enforce * * * [a] lien upon or claim to * * * personal property within the district * * *." 28 U.S.C. § 1655 (1964). Defendant Bank's motion to dismiss is grounded in part on the contention that this is not such an action and therefore the District of Massachusetts does not provide proper venue. Plaintiff's complaint is construed to allege that there is personal property within the district; and, thus, it is necessary to determine only whether this is "an action * * * to enforce * * * [a] lien upon or claim to * * * personal property * * *."

Several decisions [15] and the opinions of commentators [16] indicate that the claim or lien must exist before the commencement of an action under section 1655 and it also must relate to specific property.[17] The rationale for this result is probably the notion that a plaintiff, having staked out a property right in a specific res some time prior to the commencement of his action, ought to be able to litigate where his stake is located. Plaintiff's interest is usually the result of a consensual transaction with the defendant [18] or the result of an instrument

---

before. The question of venue of such an action turns on a determination of whether a quasi in rem suit is basically a local action or a transitory action. If it is determined that a quasi in rem suit is essentially local, because control of defendant's property is essential to the court's jurisdiction, the suit may only be instituted in the district where the nonresident defendant's property seized by attachment, garnishment or other like process is located. * * * However, if the nature of the underlying transitory claim controls, then venue is determined by the residence of the parties to the action. * * * 2 J. Moore, *supra* note 3, ¶ 4.32[2] at 1237 n. 20. Moore uses the term "transitory action" to refer to in personam proceedings, and he uses the term "local action" to refer to in rem proceedings. 1 J. Moore, *supra* note 9, ¶ 0.142[2.–1] at 1455 & n. 8. Moore also states that only in rem proceedings are properly cognizable under section 1655. Thus perhaps he means only that an action which could be brought under section 1655 is not subject to the venue requirements of section 1391(a). Even this construction, however, seems difficult to reconcile with the flat language of Rule 82 that prohibits a construction of the Federal Rules which would extend the venue of actions in the district courts.

15. *E.g.*, Ladew v. Tennessee Copper Co., 218 U.S. 357, 31 S.Ct. 81, 54 L.Ed. 1069 (1910) (bill to abate a nuisance not a "claim to" property within the meaning of predecessor of section 1655); Shuford v. Anderson, 352 F.2d 755, 760–61 (10th

Cir. 1965), cert. denied, 383 U.S. 935, 86 S.Ct. 1065, 15 L.Ed.2d 852 (1966) (claim to real property created by pre-existing agreement relating to that property); Vidal v. South American Securities Co., 276 F. 855, 869–73 (2d Cir. 1921) (action to recover debt did not involve a lien upon or claim to property within district); Dormitzer v. Illinois & St. Louis Bridge Co., 6 F. 217, 218 (C.C.D.Mass.1881) (often-cited statement of the pre-existing lien requirement). Decisions arguably contrary to this line of cases will be discussed *infra* at notes 20–33 and accompanying text.

16. 2 J. Moore, *supra* note 3, ¶ 4.34[2] at 1249 n. 11; Currie, *supra* note 6, at 373 n. 162; Kaplan, *supra* note 6, at 622–23. *Compare* Blume, *supra* note 6, at 10 (praising Spellman v. Sullivan, 43 F.2d 762 (S.D.N.Y.1930), rev'd on other grounds, 61 F.2d 787 (2d Cir. 1932), discussed at note 32 *infra* and accompanying text, as showing "that section 1655 can be reasonably interpreted to apply to liens created by the commencement of suit").

17. For a recent discussion of section 1655 *see* Dry Clime Lamp Corp. v. Edwards, 389 F.2d 590, 597–98 (5th Cir. 1968) (pre-existing lien gives basis for implying consent to court's jurisdiction).

18. See Shuford v. Anderson, 352 F.2d 755, 760–61 (10th Cir. 1965), cert. denied, 383 U.S. 935, 86 S.Ct. 1065, 15 L.Ed. 2d 852 (1966) (claim to real property created by pre-existing agreement relating to that property).

under which both parties possess an interest in the same res.[19]

Applying the foregoing to the facts of this case, plaintiff had no lien on or claim to the interest of defendant Ames Nowell in the Boston trust corpus prior to the commencement of this action. Thus, it would appear that this action was improperly commenced under section 1655. Plaintiff, however, urges that there are cases which support service of process under section 1655 on the facts present here,[20] and, accordingly, they should be carefully scrutinized.

In Equitable Life Assurance Society of United States v. United States, 331 F.2d 29 (1st Cir. 1964), an action was brought by the United States to enforce a tax lien against endowment policies under which the taxpayer was the beneficiary. Substituted service was made on the absent taxpayer pursuant to section 1655. The main controversy in the case centered on whether the defendant's interest in the policies constituted "personal property" within the meaning of section 1655. It was not argued that the government's tax lien did not amount to a "lien" or "claim" under section 1655. Nevertheless, such a determination is implicit in the court's decision. The government's tax lien existed prior to the commencement of the lawsuit.[21] That, of course, is not the case here. The lien involved in *Equitable Life* was created by section 6321 of the Internal Revenue Code of 1954, which provides as follows:

> If any person liable to pay any tax neglects or refuses to pay the same

after demand, the amount * * * shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

Thus, while the government's lien was pre-existing, it did not relate to specific property, and the government's claim for taxes bore no particular relation to the property located in the jurisdiction where suit was brought. Even so, the case remains distinguishable from the situation here. The district court in *Equitable Life*[22] justified the bringing of that action in this district as follows:

> 28 U.S.C. § 1391(c), providing that 'A corporation may be sued in any judicial district in which it is * * * licensed to do business', applies to a suit against 'Equitable [the garnishee], which is licensed to do business in Massachusetts. 28 U.S.C. § 1396, providing that 'Any civil action for the collection of internal revenue taxes may be brought in the district where the liability for such tax accrues, in the district of the taxpayer's residence, or in the district where the return was filed,' applies to this action for the collection of internal revenue taxes due from Brody [the absent defendant] whose liability for tax accrued in Massachusetts and who filed his tax here.

213 F.Supp. at 907. In affirming, the Court of Appeals noted that "[i]t is not claimed that Brody was domiciled * * * [in the District of Massachusetts], but his returns had been filed there, which may have suggested this selection [the

---

19. *See* Greeley v. Lowe, 155 U.S. 58, 15 S.Ct. 24, 39 L.Ed. 69 (1894) (bill for partition of land); Franz v. Buder, 11 F.2d 854 (8th Cir. 1926), cert. denied, 273 U.S. 756, 47 S.Ct. 459, 71 L.Ed. 876 (1927) (bill to determine and quiet title to remainder interest in trust corpus based on trust agreement establishing plaintiff as a remainderman). Other decisions showing when actions are properly within section 1655 are collected in 2 J. Moore, *supra* note 3, ¶¶ 4.34[2], 4.37–4.41 and Blume, *supra* note 6.

20. Plaintiff appears to rely on Equitable Life Assurance Soc'y of United States v. United States, 331 F.2d 29 (1st Cir.

1964), affirming United States v. Brody, 213 F.Supp. 905 (D.Mass.1963); Huntress v. Estate of Huntress, 235 F.2d 205 (7th Cir. 1956); Spellman v. Sullivan, 61 F.2d 787 (2d Cir. 1932), rev'g 43 F. 2d 762 (S.D.N.Y.1930); and Franz v. Buder, 11 F.2d 854 (8th Cir. 1926), cert. denied, 273 U.S. 756, 47 S.Ct. 459, 71 L.Ed. 876 (1927).

21. The insurance company defendant was notified of the lien in January 1959 and suit was instituted in October 1961. 331 F.2d at 31.

22. In the district court the case was styled United States v. Brody, 213 F. Supp. 905 (D.Mass.1963).

selection of the District of Massachusetts as the court in which the action was brought]. See 28 U.S.C. § 1396." 331 F.2d at 31. Thus, there was an alternative statutory basis for venue apart from section 1655. No such alternative basis is available in this action.[23] Other reasons can be advanced to distinguish the two cases. It can be argued that the public's interest in the collection of taxes due the government, as fortified by the blanket lien afforded by section 6321 of the 1954 Code, outweighs any inconvenience to an absent defendant when that lien is enforced under section 1655. In addition, a district court is apparently the only forum open to the government when it wants to enforce a tax lien.[24] In the case at bar, however, plaintiff would appear to have a state forum.[25]

Plaintiff also relies on Huntress v. Estate of Huntress, 235 F.2d 205, 61 A.L.R. 2d 682 (7th Cir. 1956), as support for her argument that this case is properly within section 1655.[26] In *Huntress,* plaintiff, a citizen of Illinois, brought suit in the United States District Court in Illinois against an Illinois bank and insurance company, the estate of her deceased former husband, and her former husband's second wife. The bank and insurance company were alleged to hold property of the deceased with a situs in Illinois. The second wife was a citizen of New York, and the former husband's estate had a situs outside Illinois, perhaps in New York. Defendant second wife appeared generally, and no jurisdictional problems were posed with respect to the Illinois defendants.[27] The trial court dismissed the action.[28] The Court of Appeals reversed, holding that Federal Rule of Civil Procedure 18(b) permits a plaintiff to bring one action to establish a debt and to reach property in the hands of others, despite the fact that Illinois

23. What has been said is in no way meant to imply that all proceedings to enforce tax liens brought under section 1655 must satisfy the venue provisions of section 1396 as to an absent taxpayer. *See generally* United States v. First Nat'l City Bank, 379 U.S. 378, 404–09, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965) (by implication in dissenting opinion of Mr. Justice Harlan).

24. *See* Int.Rev.Code of 1954, § 7403(a) (providing for the filing of actions in the district courts by the Attorney General).

25. *See* Earle v. Commonwealth of Pennsylvania, 178 U.S. 449, 20 S.Ct. 915, 44 L.Ed. 1146 (1900) (account of plaintiff's debtor in hands of national bank is subject to attachment order issued by state court despite provisions of what is now 12 U.S.C. § 91 (1964)); Anderson Nat'l Bank v. Luckett, 321 U.S. 233, 248, 64 S.Ct. 599, 88 L.Ed. 692 (1944); Superior Court Rules, 1932, Annotated 30–31 (Mass.Super.Ct.1931). *Compare* Phelan v. Atlantic Nat'l Bank, 301 Mass. 463, 464–65, 17 N.E.2d 697 (1938) (attachment of national bank's property in hands of trustee prohibited).

26. In her brief, plaintiff states that the complaint in this action was modelled on the *Huntress* case. Plaintiff's Brief at 8 (filed February 26, 1968).

27. Diversity of citizenship did not exist between plaintiff and Illinois defendants. They were joined in their capacity as stakeholders, however, and should not be considered parties to the controversy within the meaning of 28 U.S.C. § 1332 (a) (1). *Cf.* Empire Lighting Fixture Co. v. Practical Lighting Fixture Co., 20 F.2d 295, 296 (2d Cir. 1927) (diversity of citizenship not required between creditor and transferee in action to set aside fraudulent conveyance). In any event, the court stated broadly that diversity is not required for an action brought under section 1655. *See* note 4 *supra.*

28. The Court of Appeals summarized the trial court's action as follows:
The trial court, in dismissing the suit, commented that the plaintiff was seeking to impose a trust on the pension fund; that Geneve, the deceased's second wife, took the position that plaintiff's action was in the nature of a creditor's bill which must fail because she had not obtained a judgment against the debtor; that plaintiff's position was that she had no adequate remedy of law; and that the property claimed does not belong to the estate, but to her. The court concluded by stating that, inasmuch as plaintiff is a mere creditor and the *res* did not come into existence until after the contract was made, the suit could not be entertained.
235 F.2d at 207.

procedure would require two separate actions. The court also held that section 1655 was available to make service on the absent estate.[29] That would be the equivalent here of a similar holding concerning service under section 1655 on the absent debtor, plaintiff's former husband Ames Nowell. The action in *Huntress* was for breach of promises contained in a separation agreement—an action similar to one of the claims presented here. As such, there was no pre-existing lien or claim.

The *Huntress* court relies exclusively on its opinion in Graff v. Nieberg, 233 F.2d 860 (7th Cir. 1956)[30] for its conclusion that service under section 1655 is appropriate. Considering that the pre-existing lien requirement embodies significant policies of fairness and convenience to absent defendants in actions brought in the federal courts, this court

is of the opinion that *Huntress* and *Graff* should not be followed.

Plaintiff urges Spellman v. Sullivan, 43 F.2d 762 (S.D.N.Y.1930), reversed on other grounds, 61 F.2d 787 (2d Cir. 1932), as support for her contention that service under section 1655 is proper at least for that part of her action based on a judgment recovered in a Texas federal district court. *Spellman* involved a creditor's bill to reach equitable assets of the defendant judgment debtor located in the Southern District of New York, the district where the bill was brought. Plaintiff was a citizen of Missouri and defendant was a citizen of New Jersey. Plaintiff had previously obtained the judgment against the defendant in the same court, and in that action the court had acquired personal jurisdiction over the defendant (61 F.2d at 788). In prosecuting the creditor's bill, plaintiff

---

29. It may be that *Huntress* relied on Rule 18(b) in reaching the conclusion that service under section 1655 would be proper. But it would seem that such a construction would overlook Rule 82's prohibition on construing the Federal Rules to extend the jurisdiction or venue of the district courts. Rule 18(b) provides that "[w]henever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action * * *." Giving full effect to the mandate of Rule 1 that Rule 18(b) be construed "to secure the just, speedy, and inexpensive determination of every action", it nevertheless seems a violation of Rule 82 to consider that the above language permits bringing a civil action in a district where it could not otherwise be brought.

Without mentioning Rule 82, Professor Moore recommends that this sort of action be treated as an in rem proceeding, thus permitting service of process on both an absent debtor (in *Huntress* the estate) and an absent transferee (in *Huntress* the second wife). 3A J. Moore, *supra* note 5, ¶ 18.11 at 2077. He notes, however, that "it should be recognized that this will involve in some degree premising the validity of the proceeding on the very fact in issue * * *." *Id.* at 2076. He further recognizes that, as to the debtor, the proceeding would be "essentially quasi in rem". *Id.* at 2076–

77. Elsewhere Professor Moore states that quasi in rem actions are not cognizable under section 1655. 2 J. Moore, *supra* note 3, ¶ 4.34[2] at 1249 n. 11. That is the view adopted here. *Accord* (as to the impact of Rule 18(b)) Flanagan v. Northern Lumber Co., 17 F.R.D. 432 (N.D.N.Y.1954), appeal dismissed, 222 F.2d 539 (2d Cir. 1955) ; American Surety Co. of New York v. Edwards & Bradford Lumber Co., 57 F.Supp. 18, 25–26 (N.D. Iowa 1944).

30. In *Graff*, plaintiff, a citizen of Missouri, brought an action in the Eastern District of Illinois to impress a trust on land located there. Plaintiff alleged that defendant Samuel Nieberg breached an indemnity agreement which provided that defendant would discharge mechanics' liens on property in Missouri. Plaintiff further alleged that the Illinois land had been fraudulently transferred to defendant Ida Nieberg. Both defendants were citizens of Florida. Reversing the district court's dismissal of the complaint, the Seventh Circuit indicated that service under section 1655 was proper, although the court also found that defendants, by appearing generally, waived objection to the court's in personam jurisdiction over them. It seems clear that the claim presented in *Graff* had no vitality as to the specific property involved prior to the institution of the lawsuit.

obtained an order for service by publication on the defendant pursuant to the statutory predecessor of section 1655. Defendant's motion to vacate that order was denied on the ground that a judgment creditor's bill constituted an "equitable lien or claim" (43 F.2d at 764) on the property involved within the meaning of the statute.

The district court in *Spellman* distinguished the case before it from most of those previously decided under the statute on the ground that the latter did not involve a claim or lien upon which a judgment had been recovered. The court emphasized that a judgment creditor's bill was available under New York law only when a judgment had been recovered and execution on it had been returned unsatisfied. The court found that the filing of a judgment creditor's bill under both New York law and federal equity practice creates a lien on the judgment debtor's equitable assets. In justifying any supposed departure from the line of cases requiring a pre-existing claim or lien, the court noted:—

> If the [pre-existing lien] rule mentioned in these cases is a sound one and is applicable, no creditor's bill can be maintained except where the judgment debtor remains available for service within the district. The court may render a judgment in favor of the creditor on the merits, and execution may be returned unsatisfied. The judgment debtor may have equitable assets of considerable value located in the district. But we are told that the judgment debtor, by removing from the district and staying out of it, can baffle the judgment creditor and render the court powerless to enforce its own judgment. That is the very situation in the instant case. If this argument is tenable, it is a reproach to our system of administering justice.

The Court of Appeals agreed with the district court on the question of service under the predecessor of section 1655

"[f]or the reasons sufficiently stated" (61 F.2d at 788) by the district judge.

The lien of the trustee process under the Massachusetts practice and that created by filing the creditor's bill in *Spellman* are both still tied to commencement of the action; they have no separate existence. Thus *Spellman* would appear to represent a marked departure from the pre-existing lien requirement.[31] The decision, however, can be reconciled with the prior law. In reaching its decision, the district court in *Spellman* distinguished Shainwald v. Lewis, 5 F. 510 (D. Nev.1880)—a case holding service under a predecessor of section 1655 improper— as a decision involving an attempt to enforce the judgment of another district court. The district court in *Spellman*, however, was confronted with a bill to enforce its own judgment; and since personal jurisdiction over the defendant had been secured in the earlier proceedings, that fact can be taken as satisfying the contact contemplated by the pre-existing lien requirement between the absent defendant and the jurisdiction where his property is located.

In any event, it does not follow that the course followed in *Spellman* is appropriate today. Under the Federal Rules of Civil Procedure, adopted after the *Spellman* decision, if plaintiff here had recovered a judgment in this district, she could utilize trustee process to reach defendant's interest in the Massachusetts trust pursuant to Federal Rule 69. While this question has not been argued, it would appear that the same process would be available to plaintiff if she had first registered her Texas federal district court judgment here because another post-*Spellman* statute provides that the judgment of another district court shall, if registered, "have the same effect as a judgment" recovered here and "may be enforced in like manner". 28 U.S.C. § 1963. With these significant changes there would seem to be no reason why *Spellman's* application of section 1655 should be given effect here. Of

31. The case is discussed approvingly in 2 J. Moore, *supra* note 3, ¶ 4.39 at 1272– 73, and also in Blume, *supra* note 6, at 9–10.

course, it cannot be contended that *Spellman* is of any help to plaintiff in her claim based on a separation agreement or divorce decree.

### III. *Conclusion*

The other decision relied on by the plaintiff, Franz v. Buder, 11 F.2d 854 (8th Cir. 1926), cert. denied, 273 U.S. 756, 47 S.Ct. 459, 71 L.Ed. 876 (1927), falls within the pre-existing lien rule which this court adopts for the matter now before it.[32] No other decision, statute,[33] or rule found by the court justifies service of process under section 1655 on the facts of this case.[34]

The previous order of dismissal entered did not expressly quash the trustee writ that was issued; but since none of plaintiff's claims may be brought in this court, for the reasons stated, the motion to quash has been allowed.

32. *Franz* involved a bill to quiet title and determine plaintiff's remainder interest in a trust which had its situs in the district where the action was brought. Plaintiff's claim was pre-existing because his remainder interest was established by the agreement creating the trust. The Eighth Circuit held that process could be served on absent defendants pursuant to a predecessor of section 1655.

33. During oral argument, plaintiff contended that 28 U.S.C. § 1392(b) (1964) supports the lodging of venue in this district. Section 1392(b) provides as follows:

> Any civil action, of a local nature, involving property located in different districts in the same State, may be brought in any of such districts.

Even assuming this is a "local action", it is clear that this section only applies when an action is brought in a multi-district state involving property in more than one district. Obviously that is not the situation here, and section 1392(b) cannot provide an independent basis for lodging venue in this court.

34. What has been said makes it unnecessary to fully consider the Bank's contention that this court lacks "jurisdiction" over an action "in the nature of a creditor's bill". While a dictum in Daley v. Ort, 98 F.Supp. 151, 152 (D.Mass. 1951), supports this view, it is probable, due to changes made in federal practice

since the time of the decisions relied on in *Daley*, that this court will enforce equitable remedies provided by state law. *See generally* 2 J. Moore, *supra* note 3, ¶ 2.09. Note especially Fed.R.Civ.P. 18(b), providing that "[w]henever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action * * *." The Notes of the Advisory Committee on Rules for Civil Procedure describe the thrust of the rule:

> This rule is inserted to make it clear that in a single action a party should be accorded all the relief to which he is entitled regardless of whether it is legal or equitable or both. This necessarily includes a deficiency judgment in foreclosure actions * * *. In respect to fraudulent conveyances the rule changes the former rule requiring a prior judgment against the owner * * *.

28 U.S.C.A. Rule 18.

The converse proposition—that a federal court has power to grant equitable remedies not permitted by state law (*see* Black & Yates, Inc. v. Mahogany Ass'n, 129 F.2d 227, 232–36, 148 A.L.R. 841 (3d Cir.) (dictum), cert. denied, 317 U.S. 672, 63 S.Ct. 76, 87 L.Ed. 539 (1942))—is at best dubious and does not compel the conclusion that the court lacks power to utilize remedies enforced in the state where the district court sits.